IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BARRY FLOYD BRAESEKE,

    Petitioner,                      No. CIV S-05-0279 GEB KJM P

    vs.

MICHAEL MARTEL,[1]

    Respondent.                   ORDER

_____/

        Petitioner is a California prison inmate proceeding with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges a 2003 denial of parole. On February 24, 1982, petitioner was convicted of three counts of first degree murder, committed in August of 1976. On March 25, 1982, petitioner was ordered to serve an indeterminate prison term of seven-years-to-life imprisonment.

/////

---

[1] In his April 24, 2008 supplemental traverse, petitioner asserts Mr. Martel is the warden at petitioner's place of incarceration and suggests he be identified as respondent. Rule 2(a) of the Rules Governing Section 2254 cases indicates that the proper respondent in a § 2254 action is the officer who has custody of the petitioner. Accordingly, Mr. Martel is substituted as the respondent in this case.

Petitioner raises the following claims in his first amended petition: (1) there is not sufficient evidence to support the decision to deny petitioner parole, in violation of the Due Process Clause of the Fourteenth Amendment; (2) petitioner's parole denial was based on an ex post facto law, which is prohibited by the United States Constitution; and (3) petitioner was denied parole in violation of his Fourteenth Amendment right to equal protection of the laws. As indicated in the court's March 27, 2008 order, petitioner has failed to exhaust state court remedies as to his ex post facto law claim as required by 28 U.S.C. § 2254(b)(1). Therefore, the court does not reach that claim below.

I. Background

The parole proceedings at issue occurred on January 15, 2003. At the hearing, petitioner's crime was summarized as follows:

> On August of 1976, Braeseke walked into the family room where his father, mother and grandfather was [sic] watching television. Braeseke walked up within eight inches of his father and shot him three times in the back of the head with a 22-caliber rifle. He then shot his mother two times, once in the head and once in the stomach. While the prisoner was killing his father and mother, co-defendant Barker . . . struck the grandfather in the head with a chisel three to four times. The prisoner then came over and threw his grandfather next to his mother. Barker, the prisoner's crime partner, then picked up the 22-caliber rifle and shot the grandfather twice in the head.

Answer, Ex. 2 at 7.

In denying petitioner parole, the parole board relied primarily on petitioner's offense. Id. at 34-39. The board cited other areas of concern including: (1) petitioner was arrested once as a juvenile for shoplifting, id. at 35; (2) petitioner had an unstable childhood and an unstable and dysfunctional family life, id.; (3) petitioner's parole plans are inadequate, id. at 36; (4) petitioner is a threat to others because he does not possess sufficient ability to deal with stressful situations in a non-destructive manner, id.; and 5) petitioner had not completed programming essential to his adjustment, id. at 38. The record does not make clear whether any of these factors was significant enough in the minds of those on the parole board to contribute in

any meaningful way to the denial of parole suitability finding. For instance, one of the persons on the parole panel stated: "Well, I wish you the best of luck. You're doing the best as you can, it's just a really terrible crime and multiple victims . . . and there's consequences with that. But I think you're doing the best you can right now and I encourage you to continue on that path." Id. at 38-39.

Petitioner challenged his 2003 parole denial at all three levels of California's courts. Answer, Exs. 3-5. The only court to offer a reasoned opinion was the Superior Court. The Superior Court found:

> The petition fails to state a prima facie case for relief sought. The transcript of the hearing on January 15, 2003 does not indicate that the [Board of Prison Terms] abused its discretion, nor violated Petitioner's due process rights. The evidence and testimony presented at the hearing demonstrates that there was some evidence, including but not limited to the life crime, to support the Board's denial of parole for the Petitioner.

Id., Ex. 3 at 1.

II. Standard For Habeas Corpus Relief Generally

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

/////
/////
/////
/////

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA").[2]  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

---

[2] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief.  Fry v. Pliler, 127 S. Ct. 2321, 2326-27 (2007).

words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. "Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

III. Due Process

A. Standard

In Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 11 (1979), the United States Supreme Court found that an inmate has "no constitutional or inherent right" to parole, even when a state establishes a system of conditional release from confinement. The Court recognized, however, that the structure of parole statutes might give rise to a liberty interest in parole that would, in turn, mean an inmate was entitled to certain procedural protections. Id. at 14-15. In Greenholtz, the Court found that the "mandatory language and the structure of the Nebraska statute at issue" created such a liberty interest. Board of Pardons v. Allen (Allen), 482 U.S. 369, 371 (1987).

In Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc), the Ninth Circuit sitting en banc used the Greenholtz-Allen framework as a starting place for its consideration of the "limits there are on the denial of parole" and "what if anything the federal Constitution requires as a condition of the denial of parole." Hayward, 603 F.3d at 552. The court concluded

that "in the absence of state law establishing otherwise, there is no federal constitutional requirement that parole be granted in the absence of 'some evidence' of future dangerousness or anything else." Id. at 561. Again, relying on the Greenholtz-Allen framework, the court turned to California statutory, regulatory and decisional law and concluded that a California inmate has a state created liberty interest "to parole in the absence of 'some evidence' of future dangerousness." Id. at 562. It reiterated that "the right in California to parole in the absence of some evidence of one's future dangerousness arises from California law," and provided the following direction:

> [C]ourts in this circuit facing the same issue in the future need only decide whether the California judicial decision approving the governor's decision rejecting parole was an "unreasonable application" of the California "some evidence" requirement, or was "based on an unreasonable determination of the facts in light of the evidence."

Id. at 562-63 (footnotes omitted).

Following Hayward, in Pearson v. Muntz, 606 F.3d 606 (9th Cir. 2010), the court described the analysis a district court must undertake:

> Hayward specifically commands federal courts to examine the reasonableness of the state court's application of the California "some evidence" requirement, as well as the reasonableness of the state court's determination of the facts in light of the evidence. That command can only be read as requiring an examination of how the state court applied the requirement.

Id. at 609 (citations omitted; emphases in original). Satisfaction of the "some evidence" standard for purposes of denying parole in California requires "'some evidence' of future dangerousness." Hayward, 603 F.3d at 562; see also Hatcher v. Carey, 2010 WL 3258578, at *1 (9th Cir. 2010); cf. Pearson 606 F.3d at 608 (some evidence standard evaluates whether inmate "currently poses a threat to public safety"); see also Rodriguez v. Sisto, 2010 WL 3431800, at *3 (E.D. Cal. 2010) (referencing Pearson's articulation of a "current threat" to public safety).

/////

1          Accordingly, in applying AEDPA following Hayward, the court reviews the state
2 court's decision on a parole habeas petition to determine whether its application of the some
3 evidence standard was arbitrary or was based on speculative findings and whether it was based
4 on unreasonable determinations of fact.
5     B. Analysis
6          In their decision to deny petitioner parole, parole board members noted that
7 petitioner's criminal record, other than the crimes related to the murder of petitioner's parents
8 and grandfather, was limited to an arrest for shoplifting when petitioner was a juvenile. Answer,
9 Ex. 2 at 13. The arrest occurred in 1975 when petitioner was almost 18. Id. At the time of his
10 2003 parole hearing, petitioner had been in prison for approximately 27 years and was nearly 46
11 years old. Id. at 9. The suggestion that an arrest for shoplifting, with no subsequent conviction,
12 when petitioner was 18 years old has any relevance in predicting whether petitioner would be
13 dangerous at 46, id. at 13, especially given the fact that petitioner has no other criminal record,
14 does not pass scrutiny. See Cal. Code Regs., tit. 15, § 2402(d)(6) (lack of "any significant history
15 of violent crime" is an indicator of parole suitability).
16          The parole board also noted petitioner's unstable childhood and unstable and
17 dysfunctional family situation. The record presented to the board does show that petitioner's
18 father was verbally abusive and that his parents had a strained relationship and fought regularly.
19 Answer, Ex. 2 at 8. But petitioner also indicated the abuse from his father was not constant and
20 had tapered off prior to petitioner's crimes. Id. The psychological report prepared for
21 petitioner's parole hearing indicates his mother was "very loving" and that he loved his
22 grandfather "quite a lot." February 11, 2005 Pet., Ex. 7 at 43-45. All things considered, the
23 court cannot find that petitioner's past problems with his father provide any predictive
24 information regarding petitioner's potential for current or future dangerousness. The incidents
25 with petitioner's father ended at least 27 years prior to petitioner's 2003 hearing and ended at a
26 time when petitioner was approximately 19 years old. Answer, Exs. 1 & 2 at 9. There is

evidence in the record that petitioner killed his father, in part, in reaction to his father's abuse. However, it is also apparent from the record, given the extremely irrational nature of petitioner's crimes, that the primary reason petitioner killed his father, mother and grandfather is the fact that petitioner was addicted to and under the influence of PCP. Id., Ex. 2 at 9, 11-12; February 11, 2005 Pet., Ex. 7 at 46. See id. at 48 (psychological evaluator asserts biggest risk for committing violence would be return to PCP, drug or alcohol use).

The parole board also cited petitioner's parole plans as inadequate. The record shows that petitioner planned to move to New Mexico and live with Thomas and Agnes Gibson. Answer, Ex. 2 at 24-25. He initially planned on working on their ranch while seeking employment as a computer programmer. Id. He also planned on returning to school to study computer networking and computer engineering in an effort to secure employment as a computer engineer. Id. at 25. Petitioner had not yet obtained permission for the move, id. at 25-26, but asserted that once given a parole date it would be possible for him to obtain permission from the California Department of Corrections and Rehabilitation to parole in New Mexico; he suggests the only reason he had been denied permission to go to New Mexico was his not having received a set parole date. Id. at 26. The parole board indicated it did not oppose petitioner's being transferred out of state. Id. at 39. Even if petitioner were not allowed to move to New Mexico, no showing has been made that petitioner would not be able to make parole plans in California. There do not appear to be any significant challenges to petitioner's making acceptable plans. Petitioner has marketable employment skills and a desire to obtain employment. Answer, Ex. 2 at 18, 20-22, 24-28. In light of these facts, there is no basis for the board's finding, summarily approved by the Superior Court, that petitioner posed a danger to public safety based on a lack of parole plans.

The board also stated petitioner does not possess sufficient ability to deal with stressful situations in a non-destructive manner. The only evidence in the record to support this conclusion is petitioner's original crime of conviction. Petitioner was disciplined in 1994 for

"exchanging blows" with his cellmate. February 11, 2005 Pet., Ex. 7 at 43. But the altercation did not result in injuries, not much physical damage and only a few punches were thrown. Id. at 48. A single incident of minor violence while in prison does not support a determination that a person will be "dangerous" nine years later, once released from prison. Cf. Lewis v. Schwarzenegger, No 07-02465, 2010 WL 3448570, at *3, *8 (E.D. Cal. Aug. 31, 2010) (stale disciplinary conviction not some evidence that petitioner was dangerous when he appeared before parole hearing panel).

Finally, the parole board found petitioner had not completed programming essential to his adjustment. However, other than programs related to helping petitioner deal with stress (Answer Ex. 2 at 36), the board failed to point to any specific programs petitioner should complete. Nothing in the record before the court supports the board's conclusion. While in prison, petitioner attended, among other things, college courses (id. at 14), obtained a GED (id. at 17), participated in AA, NA and other self help programs (id. at 19), worked as an electrician (id. at 20-22) and obtained computer training (id. at 18). Nothing suggests petitioner could have done significantly more prior to the time of the hearing in 2003 to better himself while in prison.

The psychologist who prepared the psychological evaluation of petitioner prior to his 2003 hearing indicated he believed petitioner's potential for violence, if released, was low:

> Within the controlled prison setting, Mr. Braeseke appears to have low potential for violence. His fight with his cellie six years ago involved just a few punches thrown at each other and not much physical damage. Were he released to the community, it is unlikely he would be violent. His biggest risk factor would involve a return to PCP or any drug or alcohol use. He is confident he could avoid that. He believes, as does this psychologist, he could "be a good citizen."

February 11, 2005 Pet., Ex. 7 at 48. The parole board appears to have completely disregarded the psychologist's assessment. While the assessment was mentioned by the board, Answer, Ex. 2 at 23-24, no effort was made to explain the board's disagreement with the evaluator's conclusions.

/////

1        Additionally, as noted, one of the persons who sat on the panel considering petitioner for parole in 2003 essentially admitted that petitioner was being denied parole solely based on the circumstances of his original crime of conviction.

        As indicated above, on habeas review of the denial of parole of a California prisoner, the court must ask whether the state court's application of the California "some evidence" requirement was reasonable, and whether the state court's determination of the facts in light of the evidence was reasonable. Other than the circumstances of his commitment offense, there is no evidence in the record to establish petitioner is a danger to others. The Superior Court's decision that there was sufficient evidence of dangerousness to deny petitioner parole represents an unreasonable application of the "some evidence" standard and an unreasonable interpretation of the facts.

        Petitioner's right to due process under the Fourteenth Amendment has been violated, his writ of habeas corpus should be granted and respondent should be ordered to set an immediate parole date for petitioner.

IV. Equal Protection

        Petitioner's other claim is that his being denied parole in 2003 violated his Fourteenth Amendment right to equal protection of the law because he was considered for parole under a standard – the "DSL" standard – that is higher than a standard used for other similarly situated inmates – the "ISL" standard. Respondent suggests in his supplemental answer that it does not appear petitioner has exhausted state court remedies with respect to this claim as required by 28 U.S.C. § 2254(b)(1). A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), cert. denied, 478 U.S. 1021 (1986). Petitioner's "DSL/ISL" equal protection claim was not raised in the only petition challenging petitioner's 2003 denial of parole filed in the California Supreme Court. See Answer, Ex. 5.

Even though petitioner's claim is unexhausted, the court should reach and reject the claim under 28 U.S.C. § 2254(b)(2) because it is not colorable. Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005). In 1992, the Ninth Circuit found there is no difference between the "DSL" and "ISL" standards for parole suitability. Connor v. Estelle, 981 F.2d 1032, 1033-34 (9th Cir. 1992). Therefore, the court has no legal basis upon which to grant petitioner relief on this claim.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for writ of habeas corpus be granted; and

2. The California Board of Parole Hearings be ordered to set a date for petitioner to parole within thirty days.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). **If a party does not plan to file objections or a reply that party is encouraged to file a prompt notice informing the court as much.**

DATED: September 30, 2010.

_____
U.S. MAGISTRATE JUDGE

1 brae0279.157