IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Barry Floyd Braeske,          )
                              )   2:05-cv-00279-GEB-CMK
            Petitioner,       )
                              )
       v.                     )   ORDER DENYING RESPONDENT'S
                              )   MOTION FOR RECONSIDERATION
Michael Martel,               )   AND ALTERNATIVE REQUEST FOR
                              )   STAY[*]
            Respondent.       )
_____)

On January 3, 2011, Respondent filed a "Motion for Reconsideration; [or in the Alternative an] Application for a Stay of the Court's December 27, 2010 Order," which granted Petitioner Braeske ("Petitioner")'s petition for writ of habeas corpus. (ECF No. 48.) Respondent argues:

> The Board . . . conducted a parole consideration hearing for [Petitioner] on May 25, 2010 . . . [which] complies with In re Lawrence, 44 Cal. 4th 1181 (2008), upon which Hayward and Pearson are based. Thus, [Petitioner] has already received the remedy ordered by this Court . . . and his Petition should be dismissed as moot."

(Resp't Mot. ("Mot.") 2:5-9, 3:19-20.) Respondent argues in the alternative, should the Court find "that dismissal is not warranted," a stay "pending resolution of Respondent's appeal" or "a temporary stay to

---

[*] This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

give him the opportunity to seek a stay in the Ninth Circuit" is "necessary and appropriate to preserve the status quo." Id. at 2:10-19.

Respondent requested an "expedited ruling by January 10, 201[1] because the Court's December 27, 2010 order requires the Board to hold a new hearing for [Petitioner] within thirty days[, and Petitioner] has been scheduled for a court-ordered hearing on January 20, 201[1]." Id. at 2:20-22.

An order was filed on January 4, 2011, which requested Petitioner to file a written response to Respondent's motion no later than January 7, 2011. (ECF No. 49.) Petitioner filed an opposition to Respondent's motion on January 7, 2011. (ECF No. 50.)

## I. BACKGROUND

This action involves Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254, in which he challenges a 2003 denial of parole. The matter was referred to a United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

The magistrate judge filed findings and recommendations on September 30, 2010, which recommended the Petitioner's application be granted since "[o]ther than the circumstances of his commitment offense, there is no evidence in the record to establish petitioner is a danger to others." (ECF No. 39 at 10:7-8.) Therefore, the magistrate judge found the "decision that there was sufficient evidence of dangerousness to deny petitioner parole [was] an unreasonable application of the 'some evidence' standard and an unreasonable interpretation of the facts." Id. at 10:8-11.

The findings and recommendations provided notice to all parties that any objections to the findings and recommendations were to be filed within twenty-one days. Respondent filed timely objections.

(ECF No. 41.) After conducting a de novo review of the action, the district judge filed an Order on December 27, 2010 adopting the magistrate judge's findings and recommendations "in full as to the recommendation that Petitioner's application for writ of habeas corpus be granted." (ECF No. 46.) The December 27, 2010 Order directed Respondent, *inter alia*, "to release petitioner within thirty days unless a new parole suitability hearing is held in accordance with the provisions required by the Fourteenth Amendment of the United States Constitution and identified in the September 30, 2010 findings and recommendations." Id. at 2:6-9.

## II. MOTION FOR RECONSIDERATION

Respondent requests the Court "reconsider its [December 27, 2010 Order] and dismiss [Petitioner's] Petition," arguing Petitioner "already received the remedy ordered by this Court" when the Board conducted a "parole consideration hearing for [Petitioner] on May 25, 2010." (Mot. 2:5-9.) Petitioner counters that Respondent did not make the required showing that he is entitled to reconsideration, and "even if [the] Court considers Respondent's tardy proffer of further evidence, it should deny the motion" because "Respondent has not provided [the] Court with a record to determine the fairness of the Board's 2010 decision." (Pet'r Opp'n ("Opp'n") 2:22-24, 3:11-16, 3:21-22, 3:28-4:4.)

"Absent 'highly unusual circumstances,' reconsideration of a final judgment is appropriate only where (1) the court is presented with newly-discovered evidence, (2) the court committed 'clear error or the initial decision was manifestly unjust,' or (3) there is an intervening change in the controlling law." Calif. Dump Truck Owners Ass'n v. Davis, 302 F. Supp. 2d 1139, 1141 (E.D. Cal. 2002) (quoting School Dist. No.

3

1J, Multnomah County, Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).

Respondent does not address this standard in his moving papers; nor has he made any showing under its criteria. However, even assuming that the May 25, 2010 parole consideration hearing is "newly-discovered evidence," Respondent has not shown that reconsideration is appropriate in this case because he has not provided a sufficient record to determine if the 2010 hearing complied with the Court's December 27, 2010 Order.[1] See Sass v. Calif. Board of Prison Terms, 376 F. Supp. 2d 975, 978-79 (E.D. Cal. 2005) (stating that respondent's assertion that subsequent parole hearings mooted Petitioner's application for writ of habeas corpus incorrectly "assumes that all of the subsequent hearings were conducted in accordance with federal law"); see also Jackson v. Carey, No. 2:02-cv-0946 FCD KJN P, 2010 WL 27772656, at *2 (E.D. Cal. July 13, 2010) ("Subsequent parole denials do not render this claim moot. . . . [P]etitioner's claim challenging the denial of parole fall[s] within the 'capable of repetition yet evading review' exception to mootness.") (citation omitted). Therefore, Respondent's Motion for Reconsideration is denied.

### III. MOTION FOR STAY

Respondent states he intends to file a notice of appeal "[s]hould [his] Motion for Reconsideration be denied," and argues "a stay pending appeal is appropriate" since "the Respondent has a high likelihood of success on the merits," and "the Board will be irreparably injured if it is forced to hold a new hearing under the parameters

---

[1] The only evidence filed in support of Respondent's Motion for Reconsideration is a transcript of the California Board of Parole Hearings' Decision from the May 25, 2010 hearing. (Mot., Ex. 1.)

4

provided by the Court." (Mot. 3:25-26, 4:13-16.) Petitioner rejoins that Respondent "has failed to demonstrate that the relevant factors support a stay of this Court's order granting the writ, or even a temporary stay." (Opp'n 11:17-19.)

Rule 62(c) prescribes: "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves or denies an injunction, the court may suspend, modify, restore, or grant an injunction . . . " However, a stay pending appeal "is not a matter of right, even if irreparable injury might otherwise result." Nken v. Holder, 129 S. Ct. 1749, 1760 (2009). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Id. at 1761 (quotation, citations and internal brackets omitted).

The following factors should be considered in deciding whether to issue a stay pending appeal:

> "(1) [W]hether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."

Golden Gate Restaurant Ass'n v. City and County of San Francisco, 512 F.3d 1112, 1115 (9th Cir. 2008) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). The Ninth Circuit applies these factors by "employ[ing] two interrelated legal tests that represent the outer reaches of a single continuum." Id. at 1115 (quotation omitted).

> At one end of the continuum, the moving party is required to show both a probability of success on the merits and the possibility of irreparable injury. . . . At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor. These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.

Id. at 1115-16 (quotations omitted).

### A.   Likelihood of Success on the Merits

Respondent's stay motion is premised upon four arguments: 1) "the Court did not apply the . . . standard of federal habeas review appropriately" by impermissibly relying upon "the Ninth Circuit's decision in Hayward[, which based] its holding on [In re] Lawrence, which the California Supreme Court issued three and half years after it denied [Petitioner's] petition[;]" 2) even if federal law permits the application of [In re] Lawrence to this case, "the Court . . . erred in its application[;]" 3) Petitioner's lack of parole plans in California was a proper basis to deny his parole; and 4) "the state court decisions [denying Petitioner's applications for writs of habeas corpus] complied with the Supreme Court's holding [in Greenholtz] that federal due process is satisfied by an opportunity to be heard and a statement of reasons why the inmate was not found suitable for parole." (Mot. 4:23-25, 5:15-22, 5:25-28, 6:2-4, 6:14-16 (citations omitted).)

### 1)   Standard of Federal Habeas Review

The Ninth Circuit has rejected Respondent's first and fourth arguments, which concern the scope of a federal court's habeas corpus review under 28 U.S.C. § 2254(d). See Haggard v. Curry, --- F.3d ----, 2010 WL 4978842, at * 5 (9th Cir. 2010) (rejecting the state's argument that "the 'some evidence' requirement is a state-created procedure that

6

1  . . . is not a procedural protection required under Greenholtz as a
2  matter of federal due process.") (citation omitted); Pearson v. Muntz,
3  606 F.3d 606, 610 (9th Cir. 2010) (holding California right to parole
4  absent some evidence of current dangerousness is protected by federal
5  due process); McCollough v. Kane, --- F.3d ----, 2010 WL 5263140 (9th
6  Cir. 2010) (applying the California Supreme Court's decision In re
7  Lawrence retroactively). Therefore, Respondent has not shown a
8  likelihood of success, nor raised serious questions, on the merits of
9  these two arguments.

### 2) Application of In re Lawrence

Respondent also argues that even if federal law permitted the Court to apply In re Lawrence to the Board's 2003 parole decision, the Court "erred in its application" by not "address[ing] the severity of [Petitioner's] crime." (Mot. 5:25-28.)

"For federal habeas review, parole decisions in California are analyzed under the 'some evidence' standard set forth by the California Supreme Court in Lawrence and Shaputis." Lewis v. Schwarzenegger, No. 07-02465 CW, 2010 WL 3448570, at *6 (N.D. Cal. Aug. 31, 2010) (citing Hayward v. Marshall, 603 F.3d 546, 562 (9th Cir. 2008).

> "[W]hen a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."

In re Lawrence, 44 Cal. 4th 1181, 1212 (2008). The aggravated circumstances of the prisoner's commitment offense may be relied upon as a basis for denying parole. Id. at 1214. However,

> [T]he aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's . . .

7

```
                history, or his or her current demeanor and mental
                state, indicates that the implications regarding
                the prisoner's dangerousness that derive from his
                or her commission of the commitment offense remain
                probative of the statutory determination of a
                continuing threat to public safety.
```

Id. at 1214. Therefore, "the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense." Id. at 1221. "This inquiry is . . . an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude." Id.

The Court conducted the individualized inquiry described in In re Lawrence in this case when it concluded "there is no evidence in the record to establish petitioner is a danger to others," other than "the circumstances of his commitment offense." (ECF No. 39, 7:7-8, 8:7-23, 8:26-9:7, 9:8-15, 9:16-25, 10:7-8 (discussing Petitioner's only past criminal offense for shoplifting as a minor, parole plans in New Mexico, "marketable employment skills," disciplinary event in 1994, significant self-help efforts, and positive psychological report).) Therefore, Respondent has not shown a likelihood of success, nor raised serious questions, on the merits of its argument that the Court incorrectly applied In re Lawrence.

**3) Petitioner's Lack of Parole Plans in California**

Respondent also argues Petitioner's "absence of parole plans [in California] is a factor of unsuitability that supports the Board's decision to deny parole." (Mot. 6:10-13.)

In denying Petitioner parole in 2003, the Board relied in part on Petitioner's parole plans, stating:

> The prisoner's parole plans does [sic] lack some work. Well, the prisoner's parole plans need to be worked on. He doesn't have any parole plans in the State of California and he have [sic] not been accepted for an Interstate Transfer to [New] Mexico. And based on that, we would say that the prisoner's parole plans are inadequate . . . .

(Resp't Answer, Ex. 2, at 36:1-7.)

In determining whether a life prisoner is suitable for parole, the Board of Parole Hearings ("Board") must consider all "relevant, reliable information available," including:

> [T]he circumstances of the prisoner's social history; past and present mental state; past criminal history . . .; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control . . . ; and any other information which bears on the prisoner's suitability for release.

15 Cal. Code Regs. § 2402(b).

Section 2402 sets forth a non-exhaustive list of factors that the Board is to consider in evaluating parole suitability. 15 Cal. Code Regs. § 2402(c),(d). Factors tending "to indicate suitability" for parole include: "(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release." 15 Cal. Code Regs. § 2402(d)(8). "Lack of parole plans is not listed as a factor tending to show unsuitability" for parole. Nicholson v. Salazar, No. CV 06-5911-JVS(AJW), 2010 WL 2757132, at *12, n.14 (C.D. Cal. April 15, 2010). "Indeed, the [relevant factor indicating suitability for parole] simply requires 'realistic plans for release' or 'marketable skills' . . ." In re Powell, 188 Cal. App. 4th 1530, 1543 (2010).

1    The Board discussed Petitioner's work history during his 2003 parole hearing. Petitioner indicated that he has obtained his GED and completed some college courses while incarcerated. ((Resp't Answer, Ex. 2, at 14:10-14, 17:20-23.) Prior to his incarceration, Petition worked for Pacific Telephone in operator services, for PriMark Marketing Company manufacturing label guns, and at a gas station. Id. at 14:19-25. At the time of the parole hearing, Petitioner worked in the institution's "maintenance repair crew," and he had completed a number of vocational programs, including "Electronic Technician . . . EEG Technician, a record clerk, a canteen clerk . . . courses in [Complete Business Oriented Language]" and "Mobile Air Conditioning Repair." Id. at 17:6-11, 17:24-18:18. Two recent supervisors submitted positive work "chronos," which indicated Petitioner would be able to find work upon his release. Id. at 20:16-22:7. The Board commended Petitioner for his work history at the hearing, stating, "the panel is aware for a number of years that you've been a very excellent worker. You've done just about the same, just about anything you could to try to improve yourself." Id. at 22:9-14.

    Petitioner also discussed his release plans with the Board during the hearing. Petitioner had plans to live with Thomas and Agnes Gibson on their cattle ranch in New Mexico. Id. at 24:25-25:27. Petitioner met Mr. Gibson while incarcerated at San Quentin as a "M2 program" sponsor. Id. at 28:15-27. Petitioner planned on helping the Gibsons on their ranch, while looking for work in town. Id. Mr. Gibson submitted a letter to the Board documenting his support for Petitioner. Id. at 27:4-28:13.

1    At the time of the hearing, Petitioner made efforts to have
2 his parole transferred to New Mexico upon his release, but was informed
3 he could not do so until he had a set parole date. Id. at 26:1-27. The
4 Board is unopposed to Petitioner being transferred out-of-state. Id. at
5 39:13-19.
6    Based upon the above record, Respondent has not shown a
7 likelihood of success on the merits, or raised a serious question, that
8 Petitioner's lack of parole plans in California constituted "some
9 evidence" that Petitioner is a current threat to public safety.
10 Petitioner had both marketable skills and a "realistic" plan for
11 release. See In re Powell, 188 Cal. App. 4th at 1543 ("[T]o qualify as
12 'realistic' a [release] plan need not be ironclad.") (citation omitted).
13    Further, the relevant inquiry for the Board is "an
14 individualized assessment of the continuing danger and risk to the
15 public safety posed by the inmate." In re Lawrence, 44 Cal. 4th at 1227.
16 Application of the "some evidence" standard "requires more than rote
17 recitation of the relevant factors with no reasoning establishing a
18 rational nexus between those factors and . . . [a] determination of
19 current dangerousness." Nestle v. Davison, No. CV 07-4331-CAS(OP), 2009
20 WL 2997225, at *8 (C.D. Cal. Sept. 11, 2009) (citing In re Shaputis, 44
21 Cal. 4th 1241, 1254 (2008).) Even if Petitioner's lack of release plans
22 in California was a factor for the Board to consider, it "failed to
23 create [the required] nexus between [that factor] and whether Petitioner
24 is currently a danger to society." Id. at *13.

25 **B.    Irreparable Injury / Comparison of Hardships / Public Interest**
26    Since Respondent has failed to show a likelihood of success,
27 or raise a serious question, on the merits of any of his arguments, the

Court need not address the remaining factors. See <u>Mount Graham Coalition v. Thomas</u>, 89 F.3d 554, 558 (9th Cir. 1996).

### IV. CONCLUSION

For the stated reasons, Respondent's Motion for Reconsideration and alternative Motion for Stay are DENIED.

Dated:  January 12, 2011

```
                         _____
                         GARLAND E. BURRELL, JR.
                         United States District Judge
```